IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J. SCOTT TIDWELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22-cv-00834 |
| | ) | |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff J. Scott Tidwell ("Tidwell") brings his complaint against Defendant Exxon Mobil Corporation ("ExxonMobil"), pursuant to 42 U.S.C. § 1983, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. Before the Court is ExxonMobil's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants ExxonMobil's motion [48].

**Background**

ExxonMobil is a petroleum and chemical manufacturing company. ExxonMobil operates a facility in Channahon, Illinois, commonly referred to as the "Joliet Refinery." Tidwell is a male who worked at the Joliet Refinery from September 10, 2007, until January 22, 2020. The present dispute stems from ExxonMobil's internal investigation of several incidents in which Tidwell allegedly harassed Jessica Lockwood, a female employee of Apache Industrial Services ("Apache"), a contractor that builds scaffolding at the Joliet Refinery.

On December 19, 2019, Brad Rajek, Human Resources Manager for the Joliet Refinery, received an email that contained an investigation report from Apache regarding an incident that occurred at the refinery on December 18, 2019. (Dkt. 49, Ex. 1-C.) According to Apache's investigation report, which included witness statements from several Apache employees, an

1

unidentified ExxonMobil employee had told Lockwood "We want to marry you" in front of her husband, Carlos Hernandez, an Apache employee working onsite. (*Id.* at 548–49.) This comment led to Hernandez making threatening comments to several ExxonMobil employees. (*Id.* at 549.) As a result, Hernandez was immediately sent home and banned from the refinery. (Dkt. 49, Ex. 4 at 25:11–23.) After receiving Apache's investigation report, Rajek initiated an investigation of the incident.

ExxonMobil's policies and procedures regarding workplace harassment are contained in the company's "Harassment in the Workplace Policy" ("Harassment Policy"). (Dkt. 49, Ex. 1-A.) The Harassment Policy defines "Harassment" as "any inappropriate conduct, which has the purpose or effect of . . . unreasonably interfering with an individual's work performance," and "prohibits any form of harassment by or towards employees, contractors, suppliers, or customers." (*Id.* at EM 200.) This conduct includes "unwelcome verbal or physical advances and sexually, racially, or otherwise derogatory or discriminatory materials, statements, or remarks." (*Id.*) The Harassment Policy provides that employees that violate the policy may be subject to termination. (*Id.*)

According to the Harassment Policy, ExxonMobil investigates complaints of harassment using a team of human resources investigators who are responsible for interviewing witnesses. At the end of the investigation, the investigators decide whether ExxonMobil's workplace harassment policy has been violated. The team then makes disciplinary recommendations to ExxonMobil business line managers, who evaluate the findings and implement the appropriate corrective actions and discipline.

Additionally, the Joliet Refinery maintains work rules that lay out how employees should conduct themselves while doing their jobs. (Dkt. 49, Ex. 1-N.) The work rules lay out several types of conduct violation that may lead to suspension or termination, including "[l]ying or making false statements to [ExxonMobil] (including [during] investigations)." (*Id.*)

On December 19 and 20, 2019, Rajek interviewed Lockwood, Tidwell, and Phil Lowry, an ExxonMobil employee, to investigate the incident. During Lockwood's interview on December 19,

2

she reported that "a few months" prior to the incident, an ExxonMobil employee had "commented on how hard of a worker [she] was" and then "blatantly asked 'will you marry me?'" and identified Tidwell as the employee in question. (Dkt. 49, Ex. 1-E at EM 232.) Lockwood also reported that on December 17, 2019, Lowry had asked her into his truck at the refinery, where he asked her personal questions and stated that "a couple of the guys out here have a 'crush on you.'" (*Id.* at EM 232–33.) Finally, Lockwood reported that during the December 18 encounter with Tidwell and Lowry, Tidwell told her "We . . . want to marry you." (*Id.* at EM 233.) Lockwood explained that each of these incidents made her feel uncomfortable, with the latter incident making her feel "extremely uncomfortable." (*Id.*)

When Rajek interviewed Lowry on December 19, Lowry denied that Tidwell had made the comment about wanting to marry Lockwood. Instead, Lowry stated that Tidwell had only said "great housekeeping" and "you are a hard worker," and that he "did not hear anything about marrying or anything derogatory." (Dkt. 49, Ex. 1-F at EM 612.) Lowry also denied that he told Lockwood that people had a crush on her. When Rajek interviewed Tidwell on December 20, Tidwell also denied that he told Lockwood that he and Lowry would like to marry her on December 18 and during the alleged incident several months prior. (Dkt. 49, Ex. 1-G at EM 568–69.)

On January 6, 2020, Rajek and Scott Carpenter, ExxonMobil Human Resources Advisor, conducted a second interview of Lockwood. (Dkt. 49, Ex. 1-H.) During that interview, Lockwood identified several witnesses who could substantiate her allegations: ExxonMobil General Foreman, Juan Serna, who was present when Tidwell made the first "will you marry me" comment a few months prior and subsequently confirmed that he had heard Tidwell make the statement, (Dkt. 49, Ex. 1-I at EM 236); and her co-workers at Apache, Elias San Juan and Pat Faauaa, who confirmed that they saw Lockwood get into Lowry's truck on December 17. (Dkt. 49, Ex. 1-J at EM 229.)

3

Based on his investigation, Rajek prepared an investigation report that concluded that Lockwood's allegations against Tidwell and Lowry were substantiated, that Tidwell's and Lowry's behavior was "inappropriate and ultimately impacted Lockwood's ability to conduct her job responsibilities," and that a "Harassment in the Workplace violation [had] occurred." (Dkt. 49, Ex. 1-M at EM 224-27.) The report further concluded that because "several witnesses corroborated Lockwood's written witness statements," including details that "were explicitly denied by Lowry and [Tidwell] in their witness interviews," "both Lowry and [Tidwell] lied during the course of [the] investigation." (*Id.* at EM 224.) As such, the report recommended that ExxonMobil terminate Tidwell and Lowry's employment "for violation of Joliet Refinery Work Rule 2(b), lying or making false statements to the Company (including investigations), coupled with the inappropriate comments and behavior exhibited in violation of the Harassment in the Workplace Policy." (*Id.*)

Pursuant to this report, and following review by the company's business line managers, three of four of whom were men, ExxonMobil terminated Tidwell's and Lowry's employment on January 22, 2020. On February 16, 2022, Tidwell filed his complaint alleging that ExxonMobil's stated reasons for terminating his employment were "pretextual and a cover-up for the real reason for its actions, which was Tidwell's sex," and thus violated Title VII prohibitions on sex discrimination and retaliation. On September 18, 2023, ExxonMobil filed this Rule 56 motion for summary judgment against Tidwell.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact

4

exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

Tidwell alleges that, in terminating his employment, ExxonMobil committed two Title VII violations: (1) sex discrimination and (2) retaliation because of his participation in an investigation of sexual harassment. The Court discusses each of these claims in turn.

*A. Sex discrimination*

The Seventh Circuit has recognized that "discrimination by employers against white men is a less common phenomenon than discrimination against minorities." *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003) (citing *Mills v. Health Care Service Corp.*, 171 F.3d 450, 456–57 (7th Cir. 1999)). Because of this reality, claims of "reverse" sex discrimination asserted by male plaintiffs are subject to a modified prima facie test that differs from the general test used to evaluate sex discrimination claims brought by female plaintiffs. *See Mills*, 171 F.3d at 457. Under this modified test, to survive summary judgment, Tidwell must show that: (1) "background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of his protected class." *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016). This modified test "in no way precludes any plaintiff with direct evidence of discrimination from bringing his claim." *Mills*, 171 F.3d at 457.

5

Tidwell contends he satisfies the first element because ExxonMobil believed the harassment allegations against him made by Lockwood—a woman—over his denials and that of Lowry—both of whom are men. The Court disagrees. Tidwell fails to show any "fishy" background circumstances related to ExxonMobil's investigation of Lockwood's allegation that support this contention. The record demonstrates that after receiving the initial report from Apache regarding the incident, ExxonMobil engaged in an investigation as outlined by its Harassment Policy and terminated Tidwell's employment pursuant to that policy and the work rules of the Joliet Refinery. ExxonMobil's actions did not rest solely on a "he-said-she-said" decision to believe Lockwood over Tidwell. ExxonMobil interviewed multiple male witnesses, all of whom corroborated Lockwood's allegations, while the only individuals who denied the allegations or advanced a different version of the incidents were Tidwell and Lowry, the targets of the investigation. Furthermore, the investigation was led by a male employee, and a predominately male team of managers supported and approved the decision to terminate Tidwell's employment.

Although the fact that the majority of the investigation team and witnesses were men is not enough to show that discrimination did not occur, *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 118 S. Ct. 998, 1001–02, 140 L.Ed.2d 201 (1998) (holding that "nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex"), the mere possibility of discrimination is not a substitute for evidence that ExxonMobil's decision to terminate Tidwell's employment was based on discrimination. *See Est. of Logan v. City of S. Bend, Indiana*, 50 F.4th 614, 615 (7th Cir. 2022) (explaining that at summary judgment, parties must litigate their case through evidence).

Here, Tidwell fails to provide direct or circumstantial evidence, and instead asks that the Court find that ExxonMobil discriminated against him based on his belief that the outcome of the company's

6

investigation was wrong. The Court will not. It is not up to the Court to go on an expedition to support or create Tidwell's arguments. *See Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Because Tidwell cannot satisfy the prima facie test, and because he has presented no direct or circumstantial evidence of discrimination, his claim of sex discrimination fails to survive summary judgment.

B. *Retaliation*

To succeed on a retaliation claim, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) the [employer] took a materially adverse action against him; and (3) there existed a but-for causal connection between the two. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021); *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

Tidwell's claim of retaliation fails on the first element. Under Title VII, a retaliation claim arises "when an employee engages in an activity protected under that statute and, as a result, suffers an adverse employment action." *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018) (quoting *Owens v. Old Wis. Sausage Co.*, 870 F.3d 662, 668 (7th Cir. 2017). Relevant here, Title VII prohibits retaliation against an employee who "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under" the statute. 42 U.S.C. § 2000e-3(a).

Tidwell argues that his involvement in ExxonMobil's internal investigation of Lockwood's allegations constituted participation in a statutorily protected activity. But the Seventh Circuit has consistently held that "[a] purely internal investigation does not involve a 'charge,' or testimony, and neither is it a 'proceeding' or a 'hearing'" under section 2000e-3 of Title VII, as opposed to an investigation "by an official body authorized to enforce Title VII" such as the Equal Employment

Opportunity Commission (EEOC) or the Illinois Department of Human Rights. *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010).

Both parties recognize that Tidwell never made a complaint to the EEOC or to the Illinois Department of Human Rights, nor participated in any investigation conducted by the department or the EEOC, prior to the termination of his employment by ExxonMobil. (Dkt. 51 at 27.) For this reason, and because ExxonMobil's investigation was an internal investigation, Tidwell has not participated in a statutorily protected activity necessary to assert a retaliation claim.

**Conclusion**

For these reasons, the Court grants ExxonMobil's motion for summary judgment [48].

**IT IS SO ORDERED.**

Date: 9/10/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge